**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2842
_____

UNIVERSITY SPINE CENTER
on assignment of John W.,
Appellant

v.

AETNA, INC.;
JOHN DOE, being a fictitious name for the Plan
Administrator whose identity is presently unknown
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-02823)
District Judge:  Hon. William J. Martini

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 1, 2019

Before:  CHAGARES, HARDIMAN, and SILER, JR.,[+] Circuit Judges.

(Filed: May 16, 2019)

_____

OPINION[*]
_____

_____

[+] The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

This appeal concerns a medical provider's standing to bring a claim against an insurer in the face of an anti-assignment provision in the insured's medical benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Because we conclude that the provision unambiguously prohibits the insured from assigning his rights under the plan, we will affirm the District Court's order dismissing the medical provider's complaint with prejudice.

I.

We write principally for the parties and therefore recite only those facts necessary to our decision. The defendant, Aetna, Inc. ("Aetna"), administers healthcare plans. J.W. was a participant in one such plan. The plaintiff, University Spine Center ("USC"), performed surgery on J.W. In connection therewith, J.W. "transferred all of his rights to benefit payments under his insurance plan, as well as all of his related rights under [ERISA]," to USC. Joint Appendix ("JA") 8. USC sought reimbursement from Aetna for the services rendered to J.W., but was only partially reimbursed.

Thereafter, USC filed a complaint against Aetna for, among other things, "fail[ure] to make payments pursuant to the controlling Plan." JA10. USC alleged that the aforementioned assignment to USC by J.W. enabled USC to bring the suit. Aetna moved to dismiss the complaint in its entirety on the basis that an anti-assignment provision in J.W.'s insurance plan deprived USC of standing. That provision reads: "Coverage and your rights under this plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any

2

court proceeding." JA114. The District Court agreed with Aetna and granted the motion to dismiss. USC timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and our jurisdiction is based on 28 U.S.C. § 1291. We review de novo a district court's dismissal of a complaint for lack of standing. N. Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 371 (3d Cir. 2015). In doing so, we "accept as true all material allegations set forth in the complaint[] and . . . construe those facts in [USC's] favor." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).[1] Additionally, we "only consider the allegations of the complaint and documents referenced therein," such as

---

[1] We note here that although Aetna moved to dismiss USC's complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(6), the District Court analyzed the motion as a factual attack regarding subject matter jurisdiction pursuant to Rule 12(b)(1). See Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016) (explaining that "[w]hen considering a factual challenge, the plaintiff [has] the burden of proof that jurisdiction does in fact exist, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case, . . . no presumptive truthfulness attaches to [the] plaintiff's allegations," and "a court may weigh and consider evidence outside the pleadings") (second and third alterations in original) (citations and quotation marks omitted). The District Court erred in analyzing Aetna's motion as a factual challenge under Rule 12(b)(1). Although, "[o]rdinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing," whether a party has derivative standing to file an ERISA claim "involves a merits-based determination," such that a motion to dismiss for lack of ERISA standing — like the one at issue — is "properly filed under Rule 12(b)(6)." N. Jersey Brain & Spine Ctr., 801 F.3d at 371 n.3. Still, we need not vacate and remand for the District Court to consider the motion using the correct standard, as "we may affirm on any basis supported by the record." Hartig Drug Co., 836 F.3d at 273 (quoting Davis v. Wells Fargo, 824 F.3d 333, 350 (3d Cir. 2016)). Accordingly, "we [now] consider whether the District Court could have granted [Aetna's] motion to dismiss under the Rule 12(b)(6) framework." Id.

3

J.W.'s healthcare plan, which USC references in its complaint. Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield, 890 F.3d 445, 449 (3d Cir. 2018) (quoting In re Schering Plough Corp., 678 F.3d at 243).

III.

USC challenges the District Court's determination that the anti-assignment provision at issue is unambiguous and, more chiefly, argues that the court erroneously concluded — based on an alleged misinterpretation of American Orthopedic — that the provision deprived USC of standing to bring its claim. We address these arguments in turn.

A.

To begin, we agree with the District Court's conclusion that the anti-assignment provision is unambiguous. Contractual language is unambiguous if it is "capable of only one objectively reasonable interpretation." Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 76 (3d Cir. 2011). When determining whether a contract is ambiguous, we consider its words, "the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Id. (quoting Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)).

Again, the anti-assignment provision advises: "Coverage and your rights under this plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding." JA114. There is only one reasonable interpretation of that language, and that is that J.W. was prohibited from assigning his rights to benefit payments. Cf. City of Hope Nat'l

4

Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 229 (1st Cir. 1998) (holding that an anti-assignment clause, which provided that "[a]ll entitlements of a member to receive covered rights are personal and may not be assigned," was "clear").

USC argues that a direction to pay a healthcare provider is synonymous with an assignment of benefits and, as evidenced by the second sentence of the anti-assignment provision, is not prohibited. We disagree and conclude that the provision may only be reasonably read as setting forth in the first sentence a prohibition on the assignment of the right to receive benefit payments and clarifying in the second sentence that directing the insurer to pay a healthcare provider directly will not assign that healthcare provider any of the insured's rights under the plan or his right to sue. Thus, we uphold the District Court's conclusion that the provision is unambiguous.[2]

## B.

Next, we address USC's argument that the District Court erred in determining that the anti-assignment provision deprived USC of standing. "Section 502(a) of ERISA empowers 'a participant or beneficiary' to bring a civil action 'to recover benefits due to him under the terms of his plan.'" N. Jersey Brain & Spine Ctr., 801 F.3d at 372 (quoting 29 U.S.C. § 1132(a)). A healthcare provider is neither a "participant" nor a "beneficiary"

---

[2] USC challenges the District Court's failure to explain why it was not persuaded by the opinion of another district court that denied a motion to dismiss involving a nearly identical anti-assignment provision. Nonetheless, we affirm the court's conclusion based on our de novo review of the provision. Sköld v. Galderma Labs. L.P., 917 F.3d 186, 191 n.9 (3d Cir. 2019) ("The determination of '[w]hether a contract is ambiguous is an issue of law subject to plenary review.'") (alteration in original) (quoting Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 419 (3d Cir. 2013)).

for purposes of ERISA, but it may acquire standing to file suit under 29 U.S.C. § 1132(a)(1)(B) if it obtains "a valid assignment of benefits by a plan participant or beneficiary." Am. Orthopedic, 890 F.3d at 449–50. An anti-assignment clause in a health insurance plan governed by ERISA may preclude such an assignment. See id. at 455 ("[A]nti-assignment clauses in ERISA-governed health insurance plans are generally enforceable[.]").

ERISA does not provide clear guidance regarding anti-assignment clauses in welfare benefit plans. Id. at 451. We would ordinarily be obligated to create federal common law to fill that statutory gap. See Teamsters Pension Tr. Fund of Phila. & Vicinity v. Littlejohn, 155 F.3d 206, 208 (3d Cir. 1998). USC urges that this Court adopt the "modern approach" as the federal common law according to which we interpret anti-assignment provisions in ERISA-governed health insurance plans. That approach directs that an anti-assignment provision only actually precludes assignment if it negates or limits one's power, as opposed to one's right, to assign. See Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 441–43 (3d Cir. 1999) (explaining the modern approach and applying it in a non-ERISA case decided under New Jersey law). An anti-assignment provision deprives an assignor of the power to assign if it "state[s] that nonconforming assignments (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment." Id. at 442.

This case does not require development of federal common law, however, because American Orthopedic controls. There, we determined that "anti-assignment clauses in ERISA-governed health insurance plans are enforceable" and, critically, held that the

6

clause at issue was enforceable. Am. Orthopedic, 890 F.3d at 448, 455. We reached our conclusion regarding the enforceability of anti-assignment provisions by relying on the holdings of six other United States Courts of Appeals that "nothing in ERISA forecloses plan administrators from freely negotiating anti-assignment clauses," id. at 453 (collecting cases), and the "black-letter law that the terms of an unambiguous private contract must be enforced," id. (quoting Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009)). We then determined that the anti-assignment clause at issue was enforceable and deprived the healthcare provider of standing to bring its ERISA claim. Id. at 455. That provision featured the following language: "[T]he right of a Member to receive benefit payments under this Program is personal to the Member and is not assignable in whole or in part to any person, Hospital, or other entity." Id. at 448.

Thus, American Orthopedic held (at least implicitly) that an anti-assignment clause is valid if unambiguous, even if it does not provide that a "nonconforming assignment[] (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment." Bel-Ray, 181 F.3d at 442. The anti-assignment provision at issue unambiguously prohibits assignment of J.W.'s right to benefit payments and is therefore enforceable, preventing USC from acquiring derivative standing to bring its ERISA claim.[3]

---

[3] We reject USC's contention that the District Court ignored its arguments regarding the modern approach. The court explained that the reason for its summary dismissal was because it had already rejected that same argument made by USC in a previous case, and USC failed to explain why the court should rule differently in this case. In any event, this Court reviewed USC's argument de novo. See N. Jersey Brain & Spine Ctr., 801 F.3d at 371.

7

IV.

For the aforementioned reasons, we will affirm the judgment of the District Court dismissing USC's complaint for lack of standing.